UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No. 23-CR-292 (CKK) |
| | : | |
| DESMOND EVANS, et al., | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE**

The government, hereby, opposes the defendants' motions in limine.[1]

**I.     Introduction**

The defendants seek to exclude depictions of and testimony regarding the victims and crime scene. Their request should be denied: the evidence at issue is relevant and that relevance is not substantially outweighed by any possible prejudice. The defendants seek the admission of evidence regarding the victim's alleged character. That request too should be denied: the proffered evidence is manifestly irrelevant.

**II.    Procedural Posture**

In the Second Superseding Indictment (ECF No. 103), defendants Desmond Evans, Ramel Henderson, Kevon Jackson, Delonte Mundaray, and Malik Terrell are each charged with the following offenses committed on or about June 9, 2023 in connection with the armed kidnapping and carjacking of two victims (DeAngelo Beale and L.H.) in the District of Columbia and Maryland:

> Count One:    Kidnapping Resulting in Death and Aiding and Abetting, in violation of 18 U.S.C. §§ 1201(a)(1) and 2, for the kidnapping of DeAngelo Beale, resulting in the death of DeAngelo Beale and Marquise Jackson.

---

[1] Specifically, the government opposes the following defense motions: ECF # 204, 205, and 209. With respect to ECF #202, the government does not intend to seek the admission of the firearms in our case-in-chief.

- Desmond Evans
- Ramel Henderson
- Kevon Jackson

Count Two: Kidnapping and Aiding and Abetting, in violation of 18 U.S.C. §§ 1201(a)(1) and 2, for the kidnapping of DeAngelo Beale.
- Desmond Evans
- Ramel Henderson
- Kevon Jackson
- Delonte Mundaray
- Malik Terrell

Count Three: Kidnapping and Aiding and Abetting, in violation of 18 U.S.C. §§ 1201(a)(1) and 2, for the kidnapping of L.H.
- Desmond Evans
- Ramel Henderson
- Kevon Jackson
- Delonte Mundaray
- Malik Terrell

Count Four: Carjacking Resulting in Death and Aiding and Abetting, in violation of 18 U.S.C. §§ 2119(3) and 2, for the carjacking of DeAngelo Beale and L.H., resulting in the death of DeAngelo Beale and Marquise Jackson.
- Desmond Evans
- Ramel Henderson
- Kevon Jackson

Count Five: Carjacking and Aiding and Abetting, in violation of 18 U.S.C. §§ 2119(3) and 2, for the carjacking of DeAngelo Beale and L.H.
- Desmond Evans
- Ramel Henderson
- Kevon Jackson
- Delonte Mundaray
- Malik Terrell

Count Six: Discharge of a Firearm in Furtherance of a Crime of Violence and Aiding and Abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2, for discharging firearms in connection with Counts 4 and 5.
- Desmond Evans
- Ramel Henderson
- Kevon Jackson

Count Seven: Causing Death Through the Use of a Firearm in Furtherance of a Crime of Violence and Aiding and Abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(j)(1), and 2, for discharging firearms in connection with Counts 4 and 5, resulting in the death of DeAngelo Beale and Marquise Jackson.

- Desmond Evans
- Ramel Henderson
- Kevon Jackson

Count Eight:   Using, Carrying, Possessing, and Brandishing a Firearm During and in Furtherance of a Crime of Violence and Aiding and Abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2, for brandishing firearms in connection with Count 5.
- Delonte Mundaray
- Malik Terrell

Count Nine:   Unlawful Possession of a Firearm (Prior Conviction), for possessing a firearm.
- Delonte Mundaray

### III. Background

On June 9, 2023, at approximately 3:40 a.m., on the 4400 block of F Street SE, Washington, D.C., the defendants, committed an armed kidnapping and carjacking of two victims—decedent DeAngelo Beale and surviving victim Lorenzo Hall. Just hours before, the defendants and victims had celebrated the birthday of a well-known neighborhood figure. The celebration commenced in the 4400 block of F Street, relocated to the Saint Yves nightclub in downtown Washington, D.C., and ultimately returned to the 4400 block of F Street SE in the early morning hours of June 9, 2023.

At approximately 2:30 a.m., Henderson, Mundaray, Marquette Jackson, and Marquise Jackson (deceased) broke into Beale's black Mercedes SUV and took items from the car. Later, at around 3:00 a.m., the victims and other defendants returned to the 4400 block of F Street SE for the block party. As the victims approached Beale's SUV, defendants, Marquise Jackson, and Juvenile-1 ambushed the victims. Initially, Marquise Jackson approached the victims near the Mercedes SUV. He exchanged handshakes and appeared to say goodbye. Meanwhile, Evans, K. Jackson, Juvenile-1, and Marquette Jackson advanced; they surrounded Beale's vehicle before attacking him. Mundaray, Terrell, and Harvey all also joined in. Both Evans and Juvenile-1 appear

3

to draw a firearm from their waistband area and brandish the firearm during the incident. Harvey drew a firearm and assumed a shooting stance, aiming his firearm squarely at Hall. Mundaray and Juvenile-1 searched and stripped Mr. Hall of his clothing. Mundaray then pushed Mr. Hall towards the passenger-side of the Mercedes SUV, and ultimately, to the rear of the Mercedes SUV.

The defendants ripped Beale from the driver's seat and pushed him into the rear of the SUV. Both Beale and Hall were ultimately forced into the trunk of the Mercedes and confined there. Henderson, Evans, Juvenile-1, and Marquise Jackson also entered the SUV, which fled the scene with the victims confined therein. Around the same time, Terrell fled the scene by driving a white Nissan Altima sedan with co-defendants K. Jackson, Harvey, and Marquette Jackson inside.

The defendants initially brought the victims to a nearby wooded area in the District of Columbia, not far from where the kidnapping and carjacking began. There, the defendants assaulted the victims, including with firearms, and demanded from Beale his addresses where he stored marijuana, jewelry, U.S. currency, and other valuables. The defendants then traveled to Maryland, where they ultimately committed armed home invasions of Beale's residences.

First, SUV and the sedan entered an apartment complex in Suitland, Maryland, where Mr. Beale maintained an apartment. Multiple defendants—including Evans, Terrell, Marquise Jackson, and Marquette Jackson—exited the vehicles and burgled Beale's apartment as he remained captive in his SUV. Afterwards, both vehicles left the location together.

About an hour later, the SUV arrived in the parking lot outside his apartment building in Waldorf, Maryland. Beale was still held captive in the SUV. Evans, Henderson, and K. Jackson then committed an armed home invasion, robbing Victim-3 at gunpoint and burglarizing the residence as Marquise Jackson and Juvenile-1 detained Beale in his vehicle.

4

At about 5:40 a.m., while the home invasion was ongoing, Beale attempted to escape. He jumped from his SUV, where he had been held captive and fired shots into the vehicle towards his captors. He hit Marquise Jackson, who was in the front passenger seat. Moments later, Evans and K. Jackson exited Beale's apartment and fired numerous shots at Beale striking and killing him.

## IV.     Argument

Evidence regarding the victims' conditions and the crime scenes (including photographs, video, and testimony) is probative of the charged crimes – in particular kidnapping and carjacking resulting in death – as is evidence regarding defendants' intent to harm the victim. And the evidence is not unfairly prejudicial. Even if it carried some unfair prejudice, that prejudice would not substantially outweigh the evidence's relevance. On the other hand, evidence proffered by the defendants regarding the victim's alleged character is irrelevant.

### A.     Evidence regarding the crime scene in general and the victim's injuries, specifically should not be excluded.

The defendants ask that certain evidence regarding the victims' conditions and the crime scenes be excluded. ECF #204, at 3. This request should be denied as the evidence is relevant, and that relevance is not substantially outweighed by any potential unfair prejudice.

Evidence regarding the victims' conditions and the crime scenes is relevant to a number of issues of consequence in this case. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. (FRE) 401. "In criminal cases, the governing hypothesis determining the relevance of evidence consists of elements of the offense charged and any defenses raised to defeat criminal liability." 2 Weinstein's Federal Evidence § 401.04. Here, the challenged evidence is relevant to establishing – among other things – that the defendants took the victims against their will and transported them in interstate commerce (§ 1201); that the defendants took

5

the victim's vehicle with force or intimidation (§2119); and that both the kidnapping and carjacking resulted in death.[2]  Moreover, the Supreme Court has explained that items of evidence often have multiple uses and mesh together to establish guilt:

> This is unquestionably true as a general matter. The "fair and legitimate weight" of conventional evidence showing individual thoughts and acts amounting to a crime reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness. Unlike an abstract premise, whose force depends on going precisely to a particular step in a course of reasoning, *a piece of evidence may address any number of separate elements*, striking hard just because it shows so much at once; *the account of a shooting that establishes capacity and causation may tell just as much about the triggerman's motive and intent. Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.* This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.

*Old Chief v. United States*, 519 U.S. 172, 187–88 (1997) (citation omitted) (emphasis added).

Evidence, like that challenged by the defendants, is routinely deemed relevant in violent crime cases.[3]  The defendants are charged with kidnapping resulting in death, which requires that the government prove, among other things, that the defendants seized, confined, kidnapped, abducted, or carried away the victims.  18 U.S.C. § 1201(a)(1).  The defendants are also charged with carjacking resulting in death, which requires the government to prove, among other things, that the defendants took the vehicle with force or violence, resulting in death.  21 U.S.C. § 2119.

---

[2]   Defendants' contention that the "manner of death . . . is undisputed" [ECF # 204, at 2] is of no moment.  "In the federal courts, '[a] simple plea of not guilty ... puts the prosecution to its proof as to all elements of the crime charged.'"  *Estelle v. McGuire*, 502 U.S. 62, 69–70 (1991) (citation omitted).

[3]   *See, e.g., United States v. Hurt*, 476 F.2d 1164, 1170 (D.C. Cir. 1973) (finding photograph of murder victim probative and properly admitted); *Harried v. United States*, 389 F.2d 281, 287 (D.C. Cir. 1967) ("Photographs of the body are admissible so long as they have some probative value and are not intended solely to inflame the jury."); *United States v. Perry*, 35 F.4th 293, 325 (5th Cir. 2022) (photographs depicting bloody corpses, while "indeed, shocking," properly admitted); *United States v. Suggs*, 266 F. App'x 258, 263 (4th Cir. 2008) ("Rather than inflaming the passions of the jury, the photographs [of toys near pools of blood] merely completed the story of the crime.").

The challenged evidence, therefore, is particularly probative here to establish that the defendants used force in detaining the victims and in taking the vehicle and their action resulted in death. *See, e.g., Villafuerte v. Stewart*, 111 F.3d 616, 627 (9th Cir. 1997) (photographs depicting bloody crime scene admitted to prove kidnapping); *United States v. Petary*, 857 F.2d 458, 463 (8th Cir. 1988) (photographs depicting bloody crime scene admitted to prove kidnapping victim taken against her will).

This relevant evidence is not unfairly prejudicial. FRE 403 precludes the admission of otherwise relevant and admissible evidence only if "its probative value is *substantially* outweighed by the danger of unfair prejudice . . . ." FRE 403 (emphasis added). The balancing between probative and unfairly prejudicial should lean toward inclusion:

> Otherwise admissible evidence may also be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A risk of "unfair prejudice" can arise when "some concededly relevant evidence [could] lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." That said, "Rule 403 'tilts, as do the rules as a whole, toward the admission of evidence in close cases,' even when other crimes evidence is involved."

*United States v. Green*, 149 F.4th 733, 751 (D.C. Cir. 2025) (citations omitted).

The evidence challenged by the defendants should not be excluded pursuant to FRE 403. Rule 403's definition of prejudicial evidence does not include incriminating evidence that simply prejudices a defendant's chances of acquittal. The Supreme Court has described "unfair" prejudice as "speak[ing] to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. The D.C. Circuit has explained that FRE 403's prohibition of unfairly prejudicial evidence in this way:

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone. It does not bar powerful, or even "prejudicial" evidence. Instead, the Rule focuses on the "danger of unfair prejudice," and gives the court discretion to exclude evidence only if that danger "substantially outweigh[s]" the evidence's probative value. [citations omitted, alterations in original].

*Gartmon*, 146 F.3d at 1021 (affirming admission of evidence that the defendant, charged with fraud, had placed gun in co-conspirator's vagina and threatened her); *see also United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("Rule 403 'does not bar powerful, or even "prejudicial" evidence. Instead, the Rule focuses on the "danger of unfair prejudice," and gives the court discretion to exclude evidence only if that danger "substantially outweigh[s]" the evidence's probative value.'"). In close cases, the court should "lean towards admitting evidence." *United States v. Straker*, 800 F.3d 570, 589 (D.C. Cir. 2015) (citations omitted); *see also United States v. Clarke*, 24 F.3d 257, 265-66 (D.C. Cir. 1994) (quotations and citations omitted) (emphasis in original) ("[I]n determining whether the probative value is *substantially* outweighed by the danger of unfair prejudice it is a sound rule that the balance should be struck in favor of admission when the evidence indicates a close relationship to the event charged.").[4]

The evidence challenged by the defendants presents no danger of unfair prejudice. It does not, for example, inject some new and prejudicial concept into the case, which might inflame the jury. Even if this Court were to conclude that the proffered evidence had the potential for some

---

[4] *See, also., United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983) ("Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing."); *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996) ("Because Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly."); *United States v. Bradley*, 145 F.3d 889, 893 (7th Cir. 1998) (Rule 403 is not a tool designed "to permit the Court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none.").

8

"unfair prejudice," that prejudice would not "substantially outweigh" the evidence's great probative value.

Defendants' claim that color photographs and videos of the victim and the crime scene and testimony regarding the victims' injuries are unfairly prejudicial is also baseless because, as a general proposition, the government's case should not be striped of its vitality and impact.

> But there is something even more to the prosecution's interest in resisting efforts to replace the evidence of its choice with admissions and stipulations, for beyond the power of conventional evidence to support allegations and give life to the moral underpinnings of law's claims, there lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be. Some such demands they bring with them to the courthouse, assuming, for example, that a charge of using a firearm to commit an offense will be proven by introducing a gun in evidence. A prosecutor who fails to produce one, or some good reason for his failure, has something to be concerned about. "If [jurors'] expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party." Expectations may also arise in jurors' minds simply from the experience of a trial itself. The use of witnesses to describe a train of events naturally related can raise the prospect of learning about every ingredient of that natural sequence the same way. If suddenly the prosecution presents some occurrence in the series differently, as by announcing a stipulation or admission, the effect may be like saying, "never mind what's behind the door," and jurors may well wonder what they are being kept from knowing. A party seemingly responsible for cloaking something has reason for apprehension, and the prosecution with its burden of proof may prudently demur at a defense request to interrupt the flow of evidence telling the story in the usual way.
>
> In sum, the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.

*Old Chief*, 519 U.S. at 188–89 (citations omitted).

The cases cited by the defendants do not support a different conclusion. First, in *United States v. Rezaq*, the D.C. Circuit noted that, like the charges here, "[t]the fact that *death resulted* from the hijacking was an element of the offense with which Rezaq was charged. The autopsy report, the testimony of the pathologist, and the photographs all demonstrated that it was Rezaq's bullets that killed" the victims. 134 F.3d 1121, 1138 (D.C. Cir. 1998)(emphasis added). Accordingly, the D.C. Circuit held that the photographs and testimony were properly admitted and that "the United States was free to decline to stipulate." *Id.* at 1137-38. Second, unlike here, the photographs at issue in *Ferrier v. Duckworth*, 902 F.2d 545, 548 (7th Cir. 1990) (emphasis added), were "*enlarged to twelve square feet.*" Nevertheless, the conviction was affirmed. *Id.* at 549.

**B.    Evidence regarding the defendants' intent to cause death of serious injury should not be excluded.**

Second, defendants object to the admission of evidence that they "harbored a specific intent to kill or inflict grievous harm upon the decedent beyond the harm inherent in kidnapping." ECF # 209 at 2. It is unclear precisely what evidence the defendants seek to exclude. The defendants objection is baseless, to the extent they to exclude general evidence explaining what happened on the evening of June 8-9, 2023, and why it happened. The Supreme Court has explained that – for any number of reasons – the government is entitled to prove its case:

> Jury duty is usually unsought and sometimes resisted, and it may be as difficult for one juror suddenly to face the findings that can send another human being to prison, as it is for another to hold out conscientiously for acquittal. When a jurors duty does seem hard, the evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment. Thus, the prosecution may fairly seek to place its evidence before the jurors, *as much to tell a story of guiltiness as to support an inference of guilt*, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault.

*Old Chief v. United States*, 519 U.S. 172, 187–88 (1997) (citation omitted) (emphasis added).

10

### C.     Evidence regarding the victim's alleged character should not be admitted.

"To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."  Fed. R. Evid. 103(d); *see also United States v. Young*, 470 U.S. 1, 10 (1985) ("[T]he trial judge has the responsibility to maintain decorum in keeping with the nature of the proceeding; the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct.") (internal quotation omitted)).  In service of this responsibility, the Court has broad discretion to determine whether evidence or argument can properly be presented at trial.  *See United States v. Morgan*, 581 F.2d 933, 936 (D.C. Cir. 1978) ("The district court has wide discretion to admit or exclude evidence where the question is one of relevancy or materiality.").  This includes the exclusion of evidence or argument whose only purpose is to encourage the jury to nullify.  *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975) (affirming exclusion of evidence relevant only to jury nullification) (*citing Sparf v. United States*, 156 U.S. 51, 106 (1895)); *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006) ("[A] juror . . . who commits jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role.").

The proffered evidence alleging that the victim had a "violent" "aggressive" character [ECF # 205] is not relevant to any issue of consequence in this case; its only purpose would be to besmirch the victim.  "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.  Fed. R. Evid. 401; *see, e.g., United States v. Watkins,* 42 F.4th 1278, 1288 (11th Cir. 2022) ("Although a defendant has a right to present crucial, relevant evidence to his defense, he does not have a right to introduce evidence that 'does not bear a logical relationship to an element of the offense or an affirmative defense, whether direct or indirect.'"); *United States v. Hurn*, 368

F.3d 1359, 1365 (11th Cir. 2004) ("where the proffered evidence does not bear a logical relationship to an element of the offense or an affirmative defense, whether direct or indirect, a defendant has no right to introduce that evidence and a district court may properly exclude it.").[5]

Here, defendants Evan, Henderson, and Jackson are charged with, among other things, committing a kidnapping and carjacking resulting in death. 18 U.S.C. §§ 1201(a)(1), 2119. The government is not required prove the defendants intended the resultant death. While generally mens rea is required for each element in a criminal act; here that principle bows to the more specific notion, articulated by the Supreme Court, that criminal statutes are often designed to ratchet up punishment based on "the unintended consequences of [a defendant's] unlawful acts." *Dean v. United States*, 556 U.S. 568, 570–76 (2009). Specifically, Secs. 1201 and 2119 do "not require that the deaths result from voluntary and intentional conduct, only that 'the death of any person results' in the course of the kidnapping." *United States v. Barraza*, 576 F.3d 798, 807 (8th Cir. 2009); *cf. United States v. Woodlee*, 136 F.3d 1399, 1405 (10th Cir. 1998) (interpreting "resulting in" element of 18 U.S.C. § 245(b): "the standard 'is one of causation, not state of mind.'"). Accordingly, self-defense is not an affirmative defense to this charge; the victim's alleged character, therefore, is utterly irrelevant.[6]

The cases relied upon by the defendants are inapposite. First, the defendant in *United States v. Burks*, 470 F.2d 432, 433 (D.C. Cir. 1972), was charged with first degree murder.

---

[5] Unlike here, the excluded evidence in *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), involved "competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence." Even a "defendant's right to present *relevant evidence is not unlimited*, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (emphasis added).

[6] *See, e.g., United States v. Schwanke,* 598 F.2d 575, 579 (10th Cir.1979) ("if death results" under 18 U.S.C. § 844(i) analogized to felony murder); *United States v. Piche,* 981 F.2d 706, 711 (4th Cir.1992) ("'if death results' requires only that death foreseeably and naturally, rather than directly and intentionally, result [sic] from the rights-violating conduct"); *United States v. Hayes,* 589 F.2d 811, 821 (5th Cir.1979) ("No matter how you slice it, 'if death results' does not mean 'if death was intended.'").

12

Likewise, *Burton v. United States*, 668 F. Supp. 2d 86, 107-08 (D.D.C. 2009), involved the determination of contributory negligence in a medical malpractice civil case. Significantly, neither case involved a "death resulting" offense.

Even if the victim's alleged character had a scintilla of relevance, such evidence still should be excluded as its scant probative value would be "substantially outweighed by a danger of" "unfair prejudice, confusing the issues, [and] misleading the jury." Fed. R. Evid. 403. "A defendant has a constitutional right to present a defense . . . At the same time, the district court may properly restrict the presentation of evidence based on concerns that the evidence might confuse or mislead the jury." *United States v. Lathern*, 488 F.3d 1043, 1045–46 (D.C. Cir. 2007); *United States v. Wilson, 160 F.3d 732, 742 (D.C. Cir. 1998)(*citations omitted) ("The Supreme Court has clearly instructed that "rules excluding evidence from criminal trials ... do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'").

*United States v. Dakins*, 872 F.2d 1061 (D.C. Cir. 1989), is instructive in this regard. In *Dakins*, the defendant sought to introduce evidence of misconduct by the informant's handling agent. *Id.* at 1063. The D.C. Circuit held that the proffered evidence was irrelevant, and then noted that, even if relevant, the evidence was excludable because it had a tendency to confuse or mislead the jury. *Id.*; *see also United States v. Townsend*, 987 F.2d 927, 931 (2d Cir. 1993) (excluding evidence pursuant to R. 403 regarding defendant's reason for commission of the charged offense because the "question of whether the defendant had a good or evil purpose" is irrelevant); *United States v. McQuarry*, 816 F.3d 1054, 1057–1058 (8th Cir. 2016) (excluding as misleading and confusing video offered by defendant as basis for her belief that she was not making false claims on her tax returns); *United States v. Reevey*, 364 F.3d 151, 157 (4th Cir. 2004)

13

(excluding evidence not related to charged offenses because it had potential to confuse and mislead jury).

## V.     Conclusion

The evidence that the defendants seek to exclude – depictions of and testimony regarding the victims and crime scene – is relevant. And its relevance is not *substantially* outweighed by any possible undue prejudice. That evidence, therefore, should not be excluded. Conversely, evidence regarding the victim's alleged character is manifestly irrelevant, so it should be excluded.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*John Crabb Jr.*
John Crabb Jr.
N.Y. Bar No. 2367670
Anthony Scarpelli
D.C. Bar No. 474711
601 D Street, N.W.
Washington, D.C. 20530
john.d.crabb@usdoj.gov
Anthony.scarpelli@usdoj.gov
(202) 252-1794 (Crabb)
(202) 252-7707 (Scarpelli)